## SUCCESSION OF ALEXANDER WEDDERBURN.

Under the act of 28th February, 1837, the certificate of an American consul in any foreign country, is legal evidence of the attributes, official station, and authority of any civil officer in such country, under the laws thereof.

A non-resident executor is bound, like other executors, to administer the estate under the authority of the Court of Probates, to have an inventory made, and in all other respects to proceed according to law. The will under which he acts need not be again admitted to probate, having been once proved; the executor need not take a new oath, having been previously sworn; nor need he take out new letters testamentary; but new security will be exacted of him, under the act of 13th March, 1837, where creditors present themselves and require it.

APPEAL from the Court of Probates for the Parish of New Orleans, *Bermudez*, J.

GARLAND, J. Elizabeth Julia Wedderburn, John Wedderburn, and George William Hope, residents of the kingdom of Great Britain, presented their petition to the aforesaid judge of the Court

of Probates, stating that they were the testamentary executors of the late Alexander Wedderburn, who died in the aforesaid kingdom, and annexed thereto a duly certified copy of an instrument purporting to be his last will and testament, in which they are named as executors, and which they say has been duly admitted to probate in the Prerogative Court of Canterbury in the city of London, and that they have been confirmed and recognized as such executors. It is further alleged that the aforesaid Alexander Wedderburn was never a resident of Louisiana; that he has no heirs, legatees, representatives, nor creditors therein, and no other property than about one hundred and sixty eight shares of the stock of the Louisiana, and Louisiana State Banks, which, by the provisions of said will, are vested in them. They therefore pray that the judge 'will order the registration and execution of said will, in the form and manner pointed out by law.' This, the judge of the Court of Probates refused to do, saying that 'the documents annexed to the within petition, do not furnish sufficient legal proof of the fact that the will has been duly proved before a competent judge of the place where it was received, and that the judge ordered the registry and execution of the will.' Whereupon the petitioners presented their petition to this court, setting forth the facts, and asking that the judge of the Court of Probates be ordered to show cause why a writ of mandamus should not be issued, directing him to give an order for the execution and registration of said will.

The judge of probates, for answer, admits the application to him for the order of registry and execution of the will, but denies generally, all the other facts set forth in the petition; and he then goes on to deny specially, that Alexander Wedderburn is dead, that he ever made a will, that it was ever ordered to be registered and executed by a competent judge, that the petitioners are the identical executors of said Alexander Wedderburn, and have any interest in the premises, that the property situated in Louisiana consists in movables only, that there are no creditors, heirs, or legatees in the state, and avers that the petitioners are incompetent to prove the will being interested. He further says, that if the law of the place of execution of the will is different from that of the place where its execution is sought, it should be proved as a

fact, in support of the allegation that it was duly proved; and it should further be proved, that the will is clothed with all the formalities prescribed for the validity of wills, where it was made.

We shall not undertake to characterize this answer, or to give it the name it perhaps merits. The judge admits that it may 'be considered as too technical,' and avers that his object is to demonstrate that this court cannot exercise its appellate jurisdiction in the case. In this he is mistaken, and it is time for him to learn, if he does not know it already, that this tribunal is not to be deprived of its jurisdiction by technicalities, and by raising issues; not appertaining to the case, which ought, if there is any weight in them, to have been stated when the original application was made for the registration and execution of the will. Nor will legal cobwebs be sufficient to restrain us, from directing to the judges of the inferior courts the process authorized by law, 'commanding them to render justice and to perform the other duties of their offices, conformably to law,' Code Prac. art. 837, whenever a proper case is presented for our action.

The article 838 of the Code of Practice, tells us, that the writ of mandamus is given to enable this court to exercise its appellate jurisdiction; and in the case of *The State* v. *Bermudez*, 14 La. 479, it was so decided. This court cannot take cognizance of a cause in the first instance, but as soon as application has been made to an inferior tribunal, and it has acted finally, or refused to do so, then our powers commence, and we can revise the proceedings, upon the same state of facts and pleadings, upon which the inferior court acted; and the judge cannot by an attempt to raise issues, not made before him, oust us of our legitimate authority. To repeat the language of chief justice Marshall, it is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. 1 Cranch 175.

When we examine the proceedings in this case, we do not find the judge of the Court of Probates, when application was made to him to register and order the execution of the will, assuming the grounds he now does. If they constituted his real objections, he did not divulge them, or do any thing calculated to put the parties on their guard, or to give them an opportunity of obviating the

difficulties in their way. All that he then objected was that the documents did not furnish sufficient proof that the will had been duly proved before a competent judge of the peace where it was received, and that the judge had ordered it to be registered and executed.

We now take the case upon the petition and evidence, as acted upon by the judge of the Court of Probates. A copy of the will of Alexander Wedderburn is presented; it is certified by persons stating themselves to hold official capacities, and to be authorized to act in the premises. They show the probate of the will in the Prerogative Court of the province of Canterbury, in London, by its records; and the consul of the United States in London, certifies to the official character of these persons, and that full faith and credit are due and ought to be given to their acts 'in judicature and thereout.' This certificate is in conformity to the act of the legislature passed in 1837, and is legal evidence of the attributes, official station, and authority of the persons certifying. 1 Bullard & Curry's Dig. 822. We do not know in what way these documents can be made more authentic, and the certificates appended to them, show that they would be received as evidence in the courts in Great Britain.

As to the objection that Wedderburn is not dead, it is a well settled principle of law that no probate of a will can be granted until after the death of the testator, and the court must be satisfied of the fact, before ordering the registry and execution. Matthews on Executors, 36. But we are not left to presume the death in this case, as the fact is expressly stated in the documents.

As to the objections that no will was made, and duly ordered to be registered and executed, and touching the identity of the petitioners as the executors, the documents submitted to the probate judge, and now before us, contain ample proof to refute them. If there is any truth in public records, there cannot be a doubt upon the question; but there may be minds so inaccessible to conviction, as to refuse belief to the plainest proposition.

Whether the property is movable or not, or whether there are heirs, legatees, or creditors in the state, is not, in our opinion, very material, so far as it relates to the registration and order for the execution of the will. If the will be a good one, its effects upon

the property are regulated by law; and the rights of neither heirs, legatees, nor creditors, will be effected by the simple registry and order of execution. They remain the same, and if any injury is likely to result, all persons interested have a legal remedy to arrest it, or to obtain reparation; and when they present themselves, it will be time enough to listen to them.

As to the duty of the judge of the Court of Probates, in this case, we have heretofore expressed our opinion in more than one case, identical in all essential particulars. 17 La. 486. 18 La. 570. It is unnecessary to repeat the reasoning of the court, as the question can no longer be considered an open one.

As to the consequences of permitting the executors of foreign wills to administer in this state, the property confided to them by their testators, we anticipate none so serious or embarrassing, as the respondent and his counsel seem to apprehend. An executor is generally the confidential and trusted friend of the testator. He is in fact a species of agent, which the law allows a man to appoint for the purpose of administering his affairs after his death, and there is no more reason to believe that he will be unfaithful than any other mandatory; on the contrary, it is a fair presumption that he will be more faithful, as he takes an oath, and, in some instances, is required to give security for a faithful administration. A great amount of property belonging to non-residents, is controled and managed, bought and sold by agents and attorneys, and the supervision of the Court of Probates has not been found necessary for the protection of those interested, and we are not aware that any serious losses have resulted. But over the administration of foreign executors, the Courts of Probate maintain a supervision, as they are bound to administer under their authority as other executors are. The registry of a will, and the order to execute it, and the recognition of the executor named, are requisites to authorize an administration, and do not operate as exemptions from all control or responsibility. A non-resident executor is as much bound to have an inventory made, and otherwise to proceed in conformity to law, as a resident. The will under which he acts need not be probated again, because it has already been. The executor need not take a new oath, because he has already been sworn; nor take out new testamentary letters, for he has them already. If

creditors were to present themselves, and under the act of 1837, 1 Bullard & Curry's Dig. 500, require security to be given, it would be exacted.

Let the rule be made absolute.

*Briggs*, for the petitioners.